UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

                   Petitioner,

v.

MICHIGAN DEPARTMENT OF
COMMUNITY HEALTH,

                   Respondent.

_____/

Case No. 1:10-mc-109

Hon. Hugh W. Brenneman, Jr.

**AMENDED OPINION**

This matter is before the court on a "Petition to Enforce Drug Enforcement Administration Subpoena" (docket no. 1) brought by the United States, an "Emergency motion to intervene as a respondent and for stay of proceedings" (docket no. 7) brought by the Michigan Association of Compassion Clubs (MACC) and 42 John and Jane Does (Does), and motions to file amicus briefs brought by Cannabis Patients United (CPU) (docket no. 10) and Americans for Safe Access (ASA) (docket no. 12).

## I.      Background

The United States seeks to enforce a federal administrative subpoena issued on June 4, 2010 to the Michigan Department of Community Health (MDCH) requesting certain documents in possession of that department regarding seven specified individuals. Originally the subpoena sought the following information:

> Pursuant to an investigation of violations of 21 U.S.C. 801 et seq., you are to provide copies of any and all documents, records, applications, payment method of any application for Medical Marijuana Patient Cards and Medical Marijuana Caregiver cards and copies of front and back of any cards located for the following: [names redacted in the public court record].

*See* U.S. Department of Justice/Drug Enforcement Administration Subpoena (In the matter of the Investigation of Case No.: IC-10-0034) (Subpoena No. IC-10-486990) (docket no. 3-1). At the hearing on this motion and in its supplemental brief the United States clarified that the subpoena has been narrowed and only seeks copies of patient and caregiver registration cards, or applications given the effect of such cards, for seven named individuals in connection with its investigation. A registration card contains a person's name, a random identification number, an address, date of birth, and expiration date. An application also identifies the certifying doctor. The subpoena as narrowed defines the scope of this opinion. Respondent has resisted complying with the subpoena due to a conflict arising from the passage of the Michigan Medical Marijuana Act ("MMMA"), MCL § 333.26421 *et seq*.

The federal statute authorizing the issuance of this administrative subpoena, 21 U.S.C. § 876, provides in pertinent part as follows:

(a)    Authorization of use by Attorney General

In any investigation relating to his functions under this subchapter with respect to controlled substances, listed chemicals, tableting machines, or encapsulating machines, the Attorney General may subpena witnesses, compel the attendance and testimony of witnesses, and require the production of any records (including books, papers, documents, and other tangible things which constitute or contain evidence) which the Attorney General finds relevant or material to the investigation. The attendance of witnesses and the production of records may be required from any place in any State or in any territory or other place subject to the jurisdiction of the United States at any designated place of hearing; except that a witness shall not be required to appear at any hearing more than 500 miles distant from the place where he was served with a subpena. Witnesses summoned under this section shall be paid the same fees and mileage that are paid witnesses in the courts of the United States.

*    *    *

2

(c)      Enforcement

In the case of contumacy by or refusal to obey a subpena issued to any person, the Attorney General may invoke the aid of any court of the United States within the jurisdiction of which the investigation is carried on or of which the subpenaed person is an inhabitant, or in which he carries on business or may be found, to compel compliance with the subpena.  The court may issue an order requiring the subpenaed person to appear before the Attorney General to produce records, if so ordered, or to give testimony touching the matter under investigation. Any failure to obey the order of the court may be punished by the court as a contempt thereof.  All process in any such case may be served in any judicial district in which such person may be found.

21 U.S.C. § 876(a), (c).

Section 876 was enacted over 40 years ago, in 1970, as part of the Federal Controlled Substances Act, 21 U.S.C. § 801 *et seq.*   The Controlled Substance Act provides that, "[e]xcept as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally  . . .  (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."   21 U.S.C. § 841(a)(1).   The Controlled Substances Act categorizes marijuana (marihuana) as a Schedule I substance.   21 U.S.C. § 812(c) (Schedule I) (c)(10).[1]  To be placed on Schedule I, a substance "has a high potential for abuse," "has no currently accepted medical use in treatment in the United States," and "a lack of accepted safety for use of the drug or other substance under medical supervision."  21 U.S.C. § 812(b)(1).  "For marijuana (and other drugs that have been classified as 'schedule I' controlled substances), there is but one express exception, and it is available only for Government-approved research projects, § 823(f)."  *United States v. Oakland Cannabis Buyers' Co-operative*, 532 U.S. 483, 490 (2001).  "[B]y characterizing

---

[1] The statutes and case law use both the spellings "marihuana" and "marijuana."  The court will use the more common spelling of "marijuana" unless addressing a direct quote.

3

marijuana as a Schedule I drug, Congress expressly found that the drug has no acceptable medical uses." *Gonzales v. Raich*, 545 U.S. 1, 27 (2005).

In addition to the federal criminal laws against marijuana, the State of Michigan has had similar laws outlawing marijuana for many years. However, following approval of an initiative by the voters in 2008, the Michigan legislature carved out a very limited exemption to the state criminal laws, in the Michigan Medical Marijuana Act, which allowed physicians to prescribe marijuana for the treatment of certain medical conditions. The MMMA provides an affirmative defense in a few instances to arrest or prosecution, or other adverse action by state authorities enforcing the state prohibition against marijuana. *Casias v. Wal-Mart Stores, Inc.,* ___ F.Supp.2d ___, 2011 WL 487591 at *7 (W.D. Mich., February 11, 2011)("All the MMMA does is give some people limited protection from prosecution by the state, or from other adverse state actions in carefully limited medical marijuana situations.").

When it enacted the MMMA, the Michigan Legislature adopted a course different from that followed by the federal government and the majority of other states, by finding that "Modern medical research, including as found by the National Academy of Sciences' Institute of Medicine in a March 1999 report, has discovered beneficial uses for marihuana in treating or alleviating the pain, nausea, and other symptoms associated with a variety of debilitating medical conditions." M.C.L. § 333.26422(a). Noting that most marijuana arrests in the United States are made under state law, the Legislature reasoned that "changing state law will have the practical effect of protecting from arrest the vast majority of seriously ill people who have a medical need to use marihuana." M.C.L. § 333.26422(b).[2] Finally, while the Michigan Legislature declared its

---

[2]This logic rests on the assumption that federal law enforcement will not step in to fill the void.

intent not to penalize the medical use of marijuana under state law, it had to acknowledge its action did not alter the existing federal prohibition against marijuana:

> *Although federal law currently prohibits any use of marihuana except under very limited circumstances,* states are not required to enforce federal law or prosecute people for engaging in activities prohibited by federal law. The laws of Alaska, California, Colorado, Hawaii, Maine, Montana, Nevada, New Mexico, Oregon, Vermont, Rhode Island, and Washington do not penalize the medical use and cultivation of marihuana. Michigan joins in this effort for the health and welfare of its citizens.

M.C.L. § 333.26422(c) (emphasis added).

Most of the states have not carved out a similar exception for the medical use of marijuana and neither has federal law. The use of marijuana remains a federal felony (see endnote). *See* 21 U.S.C. § 812. The new Michigan statute makes no claim, of course, that the federal government cannot continue to enforce federal law, or that the Michigan statute overrides federal law.[3]

In *United States v. Hicks*, 722 F.Supp.2d 829 (E.D. Mich. 2010), the court summarized Michigan's statutory regulation of medical marijuana:

> As codified, the MMMA allows a "qualifying patient" who has been issued a "registry identification card" to possess up to 2.5 ounces of marijuana for medical purposes. § 333.26424(a). A qualifying patient is "a person who has been diagnosed by a physician as having a debilitating medical condition." § 333.26423(h). *See* also § 333.26423(a) (enumerating qualifying "debilitating medical conditions"). A qualifying patient may designate one primary caregiver "to assist with [the] patient's medical use of marihuana," who must also obtain a registry identification card to legally possess marijuana. §§ 333.26423(g), 333.26424(b). A qualifying patient, or his or her registered primary caregiver, may also cultivate up to 12 marijuana plants for that patient's care. § 333.26424(a). A primary caregiver may be registered for up to five qualifying patients, and he or she may possess up to 2.5 ounces of

_____

[3]Whether or not marijuana *should* be considered to have an accepted medical use is not, of course, the issue before this court. For the purposes of the federal Controlled Substances Act, Congress has already made that determination. *Gonzales v. Raich, supra.*

marijuana and 12 cultivated marijuana plants for each qualifying patient.   §§
333.26424(b), 333.26426(d).

*Hicks*, 722 F.Supp.2d at 832.

In creating the registry related to the issuance of the identification cards, the MMMA

provided that certain information would be kept confidential:

> (1) Applications and supporting information submitted by qualifying patients,
> including information regarding their primary caregivers and physicians, are
> confidential.

> (2) The department shall maintain a confidential list of the persons to whom the
> department has issued registry identification cards.   Individual names and other
> identifying information on the list is confidential and is exempt from disclosure
> under the freedom of information act, 1976 PA 442, MCL 15.231 to 15.246.

> (3) The department shall verify to law enforcement personnel whether a registry
> identification card is valid, without disclosing more information than is reasonably
> necessary to verify the authenticity of the registry identification card.

> (4) A person, including an employee or official of the department or another state
> agency or local unit of government, who discloses confidential information in
> violation of this act is guilty of a misdemeanor, punishable by imprisonment for not
> more than 6 months, or a fine of not more than $1, 000.00, or both. Notwithstanding
> this provision, department employees may notify law enforcement about falsified or
> fraudulent information submitted to the department.

M.C.L. § 333.26426(h).

It is this last provision that has caused respondent to hesitate.   The MDCH's

reluctance to produce the requested documents because of this provision eventually prompted the

United States to file the present petition seeking a federal court order to enforce the federal

subpoena.   In its response to the petition, the MDCH stated that it "will comply with a valid order

from this Court" requiring it to comply with the subpoena, but wants this court's order "to make

clear" that its employees and agents "will be immunized from liability for providing information that

is confidential" under a state statute.   *See* MDCH Memorandum of law (docket no. 6).

6

## II.      Motion to intervene

MACC and 42 purported Does moved to intervene in this matter pursuant to Fed. R. Civ. P. 24 for the purpose of opposing enforcement of the subpoena directed to MDCH.  The Does seek both intervention of right under Fed. R. Civ. P. 24(a) and permissive intervention under Fed. R. Civ. P. 24(b).

A threshold question is the extent to which Fed. R. Civ. P. 24 applies in a government action to enforce an administrative subpoena issued  pursuant to § 876.  Courts have looked to Fed. R. Civ. P. 81(a)(5) as authority for individuals to intervene in similar proceedings, by providing that "[t]hese rules [the Federal Rules of Civil Procedure] apply to proceedings to compel testimony or the production of documents through a subpoena issued by a United States officer or agency under a federal statute, except as otherwise provided by statute, by local rule, or by court order in the proceedings."  *See, e.g., Donaldson v. United States*, 400 U.S. 517, 528-29 (1971) (applying the predecessor rule, Fed. R. Civ. P. 81(a)(3), to allow a motion to intervene pursuant to Fed. R. Civ. P. 24 in an IRS summons enforcement action).  Similarly, the court concludes Fed. R. Civ. P. 81(a)(5) authorizes the filing of a motion to intervene in this action to enforce an administrative subpoena.

Fed. R. Civ. P. 24(a)  provides that the court must permit anyone to intervene who: "(1) is given an unconditional right to intervene by a federal statute; or  (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  It appears undisputed that there is no express statutory right to challenge  an administrative subpoena issued under § 876,

*United States v. Moffett*, 84 F.3d 1291, 1293-94 (10th Cir. 1996), and  intervenors have not identified any unconditional federal statutory right to intervene.  Therefore, any right of intervention must be found under Rule 24(a)(2).

An applicant seeking intervention under Fed. R. Civ. P. 24(a) must establish four elements: (1) timeliness of the application to intervene; (2) the applicant's substantial legal interest in the case;  (3) impairment of the applicant's ability to protect that interest in the absence of intervention; and (4) inadequate representation of that interest by parties already before the court. *Providence Baptist Church v. Hillandale Committee, Ltd.*, 425 F.3d 309, 315 (6th Cir. 2005).  The intervenors cannot establish all four elements in this case.

First, the court finds the application to intervene was not untimely.

Second, an applicant must show a substantial legal interest in the case.  With respect to intervention under Fed. R. Civ. P. 24(a)(2), the only entities or individuals who have standing to dispute an administrative subpoena are the recipient of the subpoena (in this case the MDCH) and the target of the subpoena (in this case the seven individuals named in the subpoena).  *United States v. Phibbs*, 999 F.2d 1053, 1077-78 (6th Cir. 1993).   Here, the prospective intervenors are 42 John/Jane Does unknown to the court.  Since the MACC is not a target of the subpoena, it can only intervene, if at all, as a representative of the Does.  It became apparent at the hearing, however, that there are not, in fact, 42 actual, identifiable people claiming to be "John/Jane Does."  The would-be intervenors' counsel acknowledged that the 42 John/Jane Does simply represent the maximum number of hypothetical persons who the MACC believes could be affected by the subpoena, apparently based upon its calculations that the seven identified targets of the subpoena could be

caretakers assisting up to five qualifying patients each. MACC brief at 3.[4] Thus, this is not the usual "John Doe" situation where a real person wants to remain anonymous. Here we do not even have a person. Since these hypothetical people do not exist, and therefore cannot have a true "legal interest" in a case, they cannot intervene. It would be an absurdity to find otherwise. This court sits to adjudicate cases or controversies between real people, not hypothetical people over whom it has no control and who exist only in the imagination of counsel. "Intervenors" fail on the second element, since they do not exist and cannot be permitted to intervene. And since there are no actual applicants to intervene, there are no Does for the MACC to represent.

Even had real people stepped forward and asked MACC to represent them, they would have to show they are one of the seven people identified in the subpoena (or, if the seven are caregivers, one of their patients). Without a showing they are one of the persons named in the subpoena (or a patient), they cannot establish a substantial legal interest.[5] There has been nothing approaching such a showing here. Not only must there be real applicants, but the applicants must demonstrate a substantial legal interest in the case, and that they cannot protect that interest without intervening. *Providence Baptist Church,* 425 F.3d. at 315.

By its very nature, a proceeding to enforce an administrative subpoena presents limited legal and factual issues. An administrative subpoena, such as the subpoena in this action, typically is directed at a single entity or person and seeks to obtain specific information relevant to

---

[4] MACC relies on M.C.L. § 333.26426(d), which provides that "[t]he department shall issue a registry identification card to the primary caregiver, if any, who is named in a qualifying patient's approved application; provided that each qualifying patient can have no more than 1 primary caregiver, and a primary caregiver may assist no more than 5 qualifying patients with their medical use of marihuana."

[5] The odds are they would not be. Although the MACC claims (without substantiation) to represent approximately 10,000 medical marijuana users, this is only a small portion of the over 60,000-70,000 registered medical marijuana users in the state.

an investigation.  The judicial proceeding to enforce the subpoena typically involves only the

government agency seeking to enforce the subpoena and the person or entity in possession of the

records.

> An administrative subpoena is not self-executing and is therefore technically
> not a "search."  It is at most a constructive search, amounting to no more than a
> simple direction to produce documents, subject to judicial review and enforcement.
> Thus, unlike the subject of an actual search, the subject of an administrative
> subpoena has an opportunity to challenge the subpoena before yielding the
> information.  In the course of that resistance, the Fourth Amendment is available to
> the challenger as a defense against enforcement of the subpoena.

*United States v. Sturm, Ruger & Company, Inc.*, 84 F.3d 1, 3-4 (1st Cir. 1996) (addressing

enforcement of an administrative subpoena issued by the Occupational Safety and Health

Administration) (internal citations omitted).  Given the limited issues addressed during a proceeding

to enforce an administrative subpoena, an applicant seeking to intervene faces a substantial burden

to establish the second element under Fed. R. Civ. P. 24(a), i.e., that the applicant has a substantial

legal interest in the enforcement proceeding.  However, the target does not have automatic standing

to challenge the subpoena.  Courts have held that a target has standing to dispute an administrative

subpoena issued under § 876 on Fourth Amendment grounds, but only if he can demonstrate a

legitimate expectation of privacy attached to the records sought by the subpoena.  *Id.  See also*

*United States v. Plunk*, 153 F.3d 1011, 1020, *amended by* 161 F.3d 1195 (9th Cir. 1998), *abrogated*

*on other grounds by United States v. Hankey*, 203 F.3d 1160, 1169 n. 7 (9th Cir. 2000) (target of §

876 subpoena lacked standing to challenge the subpoena, which was directed at a third-party

business, unless he could demonstrate a legitimate expectation of privacy attaching to the records

obtained); *Moffett*, 84 F.3d at 1293 (the right or standing to contest the constitutionality of a search

under a § 876 subpoena is subsumed under substantive Fourth Amendment doctrine, which requires

the person claiming the violation to show a legitimate expectation of privacy in the information); *United States v. Thompson*, Crim. No. 07-303-1, 2010 WL 4641663 at \*15 (W.D. Pa. Nov. 8, 2010) (observing that "[w]hen DEA administrative subpoenas are issued to third parties pursuant to § 876(a), courts have held defendants lack standing to dispute their issuance," and that "[a] defendant demonstrates standing to challenge administrative subpoenas issued to third parties when he can show 'a legitimate expectation of privacy attaching to the records obtained'") (quoting *Phibbs*, 999 F.2d at 1078); *United States v. Key*, No. 3:09CR-179-S , 2010 WL 3463756 at \*1 (W.D. Ky. Sept. 1, 2010); *United States v. Mountain States Telephone & Telegraph Company*, 516 F. Supp. 225, 231 (D. Wyo. 1981).

Even assuming we had real people (albeit calling themselves John and Jane Does) which we do not, the would-be intervenors' arguments that they have a substantial legal interest in this matter, that such interest will be impaired in the absence of intervention, and that there is inadequate representation of that interest by the respondent who is already before the court, all hinge on intervenors' contention that they have a reasonable expectation of privacy that has been placed in jeopardy by this administrative subpoena.  This is simply not the case.  For the reasons discussed below, applicants if they existed would have no reasonable expectation of privacy here on several levels.

The essence of the right to privacy is one's expectation of it. *Katz v. United States,* 389 U.S. 347 (1967) (Application of Fourth Amendment depends upon whether a defendant can claim a "reasonable expectation of privacy" that was invaded by government).  Would-be intervenors simply refuse to confront the elephant in the middle of the room; they try to tip-toe around it, or close their eyes to it.  The elephant, of course, is the fact that federal law made use of

11

marijuana a felony years ago, long before Michigan voted to not prosecute people who use it for medical purposes. Michigan also made the use of marijuana a crime (and it still does); even medical marijuana, although the MMMA now provides an affirmative defense so that certain medical marijuana users cannot be prosecuted for violating Michigan's criminal law against marijuana. Prior to the passage of the MMMA, no one would have dreamt that an investigation by the Drug Enforcement Administration, or by the Michigan State Police, into the use or distribution of marijuana would have violated any "privacy rights to use marijuana." Everybody investigated drug trafficking. There was no expectation of privacy at that time.

When Michigan adopted the MMMA with its confidentiality provisions, it, of course, only changed <u>Michigan</u> law. The very text of the MMMA recognizes that "federal law currently prohibits any use of marijuana" (MCL § 333.26422(c)). Thus, anyone who is not deluding himself or trying to push an agenda knows that the confidentiality provisions are only binding on the State of Michigan and its agents, not the federal government and its agencies. "[T]he MMMA has no affect on federal law, and the possession of marijuana remains illegal under federal law, even if it is possessed for medicinal purposes in accordance with state law." *United States v Hicks,* 722 F.Supp.2d at 833. The use of marijuana continues to be a federal felony and reasonable persons would expect the DEA to continue to investigate those who use or traffic in marijuana.[6]

To the extent that the supporters of the Medical Marijuana Initiative oversold the "confidentiality" provisions to the general populous, they performed a disservice to their

---

[6]There are a number of areas of criminal law where both the federal government and the state governments have spoken, and where the same act can violate the laws of both sovereigns. Firearms, drugs and bank robberies are common examples. But the decision by one sovereign (e.g., a state) to charge its law will not negate the law of the other sovereign (e.g., the federal law). By way of illustration, both federal and Michigan law make robbing a bank a crime. Michigan could decide tomorrow that it no longer wanted to punish people who rob banks. But this decision would not make bank robbery any less a federal crime.

constituency.   The nationwide federal law against marijuana, and the nationwide federal organizations that enforce that law, were the same the day after Michigan adopted the MMMA as they were the day before.  They did not go away.  Thus, no reasonable person can expect to have a right of privacy from federal investigation when they violate federal laws.  The MMMA card affords its holder no greater cloak of privacy than did the emperor's new clothes.[7] To believe the contrary is simply to close one's eyes to reality.  But when you open your eyes, the emperor is still naked; the elephant is still in the room.

Regardless, however, an expectation of privacy in these cards is also unreasonable for a separate reason:  the cards are designed to be shown to law enforcement.  Petitioner is seeking the medical marijuana identity cards of seven persons already identified in the subpoena.  These cards simply contain the user's name (already known to petitioner) and common identifying information (e.g., address, date of birth, as well as a random identification number and an expiration date).  The purpose of these cards – their very *reason d'etre* apparently – is to provide their holders with something they can show the police if they are stopped because they have marijuana.  Having this card not only prevents the prosecution of the individual (under state law), but his arrest as well.  Obviously, the card is not going to do the medical marijuana patient much good if he does not display it to the officer when he is stopped.  Thus, medical marijuana patients or caregivers cannot reasonably expect to have a privacy interest in the very cards they intend to present to law enforcement.  (The cards, of course, have no information on them about the carrier's medical problem, his or her medical history, or the extent of the patient's marijuana treatment.)

---

[7]The reference, of course, is to Hans Christian Andersen's fairy tale about an emperor who was convinced by swindlers to believe he was wearing beautiful clothes, when in fact he was naked.

For each of these reasons, there is no expectation of privacy, and therefore applicants can demonstrate neither a substantial legal interest nor the inability to protect it absent intervention. *Providence Baptist Church, supra.*[8]

Nor has the MACC demonstrated that it has standing as an association to intervene in this action on behalf of the Does.  "[W]hether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought."  *Warth v. Seldin*, 422 U.S. 490, 515 (1975).

> If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured.  Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind.

*Id.*  MACC has not cited any authority that it can intervene as an association where the federal government seeks to enforce a § 876 administrative subpoena directed at a state agency in a criminal investigation setting.  But assuming, *arguendo*, such authority, the "Does" are conceptual only and the MACC has presented no evidence  linking its members to the records sought in the administrative subpoena other than to state that "upon information and belief" some MACC members are medical marijuana patients currently being targeted by the subpoena.  Intervenor's Brief at p. 5 (docket no. 7). Because the MACC has not demonstrated that any of its 42 hypothetical Does are targets, it cannot be seen as representing anyone claiming a substantial legal interest (assuming such an interest existed) relating to the administrative subpoena sufficient to allow it to intervene under Fed. R. Civ. P. 24(a)(2).

---

[8]This being the case, applicants also cannot show an inadequate representation of that interest by respondent.

Fed. R. Civ. P. 24(b)(1) provides that the court may permit anyone to intervene who: "(A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(3) provides that "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  For the same reasons discussed above, the would-be intervenors lack standing for permissive intervention under Fed. R. Civ. P. 24(b).  They do not have a conditional right to intervene under Fed. R. Civ. P. 24(b)(1)(A).   And neither MACC nor the 42 Does have demonstrated that they are targets of the subpoena, or  have a substantial legal interest in this litigation since they have no reasonable expectation of privacy under the facts of this case.  Because they are not targets of the investigation, applicants do not have a claim or defense that shares a common question of law or fact with the main action under Fed. R. Civ. P. 24(b)(1)(B, which involves the narrow issue of whether to enforce an administrative subpoena.  The MACC's generalized interest in advocating with respect to the regulation of medical marijuana is insufficient to give it standing to intervene in this action, Further involvement by these hypothetical intervenors will only delay this matter unnecessarily.

Accordingly, the motion to intervene and to stay the proceedings (docket no. 7) will be denied.

### III.    Motions to file amicus briefs

Two organizations, Cannabis Patients United (CPU) and Americans for Safe Access (ASA), have moved to file amicus briefs.  The decision to grant amicus status is within the sound discretion of the court and depends upon "a finding that the proffered information of amicus is timely, useful, or otherwise necessary to the administration of justice."  *United States v. Michigan*,

940 F.2d 143, 165 (6th Cir. 1991).  "The orthodox view of amicus curiae was, and is, that of an *impartial* friend of the court – *not an adversary party in interest in the litigation*," however, over the years, "some courts have departed from the orthodoxy of amicus curiae as an impartial friend of the court and have recognized a *very limited* adversary support of given issues through brief and/or oral argument."  *Id.* at 164-65 (emphasis in original).  "Classical participation as an amicus to brief and argue as a friend of the court was, and continues to be, a privilege."

The proposed amicus briefs in this instance fall into the adversarial category.  They are from groups who strongly support the use of marijuana as medicine. After reviewing the submissions of the CPU and ASA (and the would-be intervenors as possible amicus curiae), the court finds no benefit in allowing these briefs to be filed, because they contain little information that is useful or otherwise necessary to resolve the immediate petition before the court.  To the contrary, they have the potential to confuse the issue. While the proposed briefs advocate against federal interference in Michigan's new medical marijuana registry program, point out what they perceive as "acute" privacy concerns relating to marijuana use generally, and provide commentary on issues ranging from the use of medical marijuana in other states to the so-called "Obama-care" legislation, this exegesis is beyond the point and are not beneficial in addressing enforcement of the limited administrative subpoena before this court.

For example, CPU, ASA and the prospective intervenors rely on Fed. R. Crim. P. 17(c) as controlling the review of the administrative subpoena in this action, and refer to decisions applying that rule, e.g., *In re: The Matter of the Grand Jury Subpoena for THCF Medical Clinic Records*, 504 F. Supp. 2d 1085 (E.D. Wash. 2007).  Their arguments in this regard are neither helpful nor applicable, because the present controversy does not involve enforcement of a subpoena

16

issued under Fed. R. Crim. P. 17. Rule 17 pertains to subpoenas that may be served by both federal officials (prosecutors) and private parties (defendants in criminal cases), or by a federal Grand Jury. Administrative subpoenas, on the other hand, can only be issued by federal officials or agencies of the executive branch authorized by Congress to do so pursuant to that agency's adjudicative or investigative functions. The general rule is that orders enforcing subpoenas issued in criminal actions or in Grand Jury proceedings, are not final and not appealable. The subpoenaed party may only appeal from a contempt order. An administrative subpoena may be appealed immediately. While administrative subpoenas and Grand Jury subpoenas may be analogous in some respects, they are different creatures, differently reviewed. *See, e.g., Phibbs*, 999 F.2d at 1077 fn. 8 (noting that an administrative subpoena issued under § 876 is "distinct from Rule 17(c) of the Federal Rules of Criminal Procedure"); *United States v. Symonevich*, No. 09-10030-GAO, 2010 WL 98963 at *1 (D. Mass. Jan. 8, 2010) (distinguishing an administrative subpoena issued under § 876 from a trial subpoena issued under Fed. R. Crim. P. 17).

The amicus briefs are also premised on the belief that the government is seeking medical information pertaining to certain marijuana users. But as previously noted, the present subpoena no longer seeks this information. This distinguishes this case, for example, from the decision *In re: The Matter of Grand Jury Subpoena for THCF Medical Clinical Records, supra,* where "significant dosage information" was sought in the subpoenaed records.

In declining to accept the amicus briefs for filing, the court has not ignored the briefs themselves, but has necessarily read and considered them in making its decision. Thus, the advocates have essentially achieved their purpose in getting their arguments before the court. Also, the court allowed the attorney for the proposed intervenors to argue at length at the hearing.

Attorneys submitting the two amicus briefs were offered the opportunity to speak.  One declined, and one left the hearing early.

The court finds for the reasons discussed that the proposed amicus briefs are unnecessary to a resolution of the limited issue before the court, and potentially confusing. Accordingly, the motions to file amicus briefs (docket nos. 10 and 12) will be denied, and the intervenors' brief will not be treated as an amicus brief.

### IV.   Enforcement of the administrative subpoena

"[I]t must be emphasized that a district court's role in the enforcement of an administrative subpoena is a limited one."  *United States v. Markwood*, 48 F.3d 969, 976 (6th Cir. 1995).  "Following Supreme Court precedent on the enforcement of administrative subpoenas, this circuit has held that a subpoena is properly enforced if 1) it satisfies the terms of its authorizing statute, 2) the documents requested were relevant to the [agency's] investigation, 3) the information sought is not already in the [agency's] possession, and 4) enforcing the subpoena will not constitute an abuse of the court's process."  *Doe v. United States*, 253 F.3d 256, 265 (6th Cir. 2001).  The agency has the burden to satisfy the first three prongs of the test, while the respondent has the burden of establishing an abuse of court process under the fourth prong.  *See id.* at 265-72; *Chao v. Potter*, No. 1:05-mc-61, 2005 WL 4839145 at *2 (W.D. Mich. Aug. 10, 2005) (finding that "[t]he magistrate judge correctly imposed upon the Secretary the burden of satisfying the first three prongs of the test and imposed upon respondents the burden of demonstrating that enforcement of the subpoena would constitute an abuse of process").

### A.    Does the subpoena comply with the requirements of § 876?

The subpoena was issued pursuant to § 876 as part of an ongoing investigation of possible violations of the Controlled Substances Act by a very limited number of specified individuals in the Lansing, Michigan area.  *See* Declaration of Special Agent Scott (docket no. 3). This is an appropriate purpose authorized by § 876.  Courts have held that  "[a] subpoena issued under 21 U.S.C. § 876 is not restricted for use solely in enforcing the regulatory provisions of the Controlled Substances Act."  *Mountain States Telephone & Telegraph Company*, 516 F.Supp. at 229.  In addressing this issue 30 years ago, the court observed:

> That an administrative subpoena may be used for criminal investigations is not a novel proposition, and is supported by the legislative history of 21 U.S.C. § 876. D.E.A.'s predecessor agencies have long been authorized to issue investigative or administrative subpoenas, the vast majority of which were issued for use in criminal investigations.

*Id.* at 230.   Similarly, in *United States v. Hossbach*, 518 F. Supp. 759, 765 (D. C. Pa. 1980) the court found that § 876 subpoenas were authorized for use in both investigation and enforcement:

> Clearly the statute [§ 876] expressly grants the Attorney General subpoena power "in any investigation" conducted by him pursuant to his powers and duties under the Comprehensive Drug Abuse Prevention and Control Act of 1970.  This statute was intended as a comprehensive federal program to place certain drugs and other substances under strict federal controls to be administered by the Attorney General.  The Act provided the Attorney General with broad administrative duties as well as enforcement duties, both criminal and civil.

Respondent has failed to comply with the subpoena due to the confidentiality provision in the MMMA which places a criminal penalty on the disclosure of information related to qualifying patients and caregivers issued a registry identification card.  As a state law authorizing the use of medical marijuana, the MMMA cannot negate, nullify or supersede the federal Controlled Substances Act, which criminalized the possession and distribution of marijuana throughout the

19

entire country long before Michigan passed its law.  "It is a seminal principle of our law 'that the constitution and the laws made in pursuance thereof are supreme; that they control the constitution and laws of the respective States, and cannot be controlled by them.'"  *Hancock v. Train*, 426 U.S. 167, 178 (1976), quoting *McCulloch v. Maryland*, 17 U.S. 316, 426 (1819); *United States v. Hicks,* 722 F.Supp.2d at 833 ("It is indisputable that state medical marijuana laws do not, and cannot, supercede federal laws that criminalize the possession of marijuana.").

> The Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail.  It is beyond peradventure that federal power over commerce is superior to that of the States to provide for the welfare or necessities of their inhabitants, however legitimate or dire those necessities may be.

*Gonzales*, 545 U.S. at 29 (holding that the Commerce Clause authority includes the power to prohibit the local cultivation and use of marijuana in compliance with California law) (internal quotations omitted).  *See, also*, *United States v. $186,416.00 in U.S. Currency*, 590 F.3d 942, 945 (9th Cir. 2010) ("[t]he federal government has not recognized a legitimate medical use for marijuana . . . there is no exception for medical marijuana distribution or possession under the federal Controlled Substances Act[.]"); *United States v. Scarmazzo,* 554 F.Supp.2d 1102, 1109 (E.D. Cal. 2008) (Federal law prohibiting sale of marijuana is valid, despite any state law suggesting medical necessity for marijuana"); *United States v. Landa,* 281 F.Supp.2d 1139, 1145 (N.D. Cal. 2003) ("[O]ur Congress has flatly outlawed marijuana in this country, nationwide, including for medicinal purposes.").

It does not matter that Congress has stated its intent not to "occupy the field" of drug enforcement.  21 U.S.C. § 903 ("[n]o provision of this subchapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would

otherwise be within the authority of the State, unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together"). *See Goldsby v. United States*, 152 Fed.Appx. 431, 438 (6th Cir. 2005) (observing that "21 U.S.C § 903 states that Congress did not intend to 'occupy the field' of drug enforcement to the exclusion of the states"). The Supremacy Clause operates to resolve conflicts between federal and state law in areas, such as drug enforcement, where Congress does not "occupy the field."

> Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law. Such a conflict arises when compliance with both federal and state regulations is a physical impossibility, or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*Hillsborough County, Florida v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 713 (1985) (internal quotation marks and citations omitted).

The Michigan Legislature, which acknowledged in its own "Findings and Declarations" that "federal law . . . prohibits any use of marihuana," cannot create a statutory obstacle to the federal government's enforcement of federal law regulating this controlled substance. The MMMA's confidentiality provision 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,' by preventing the federal government from using a proper federal subpoena to obtain records which involve a controlled substance, the use of which is prohibited by federal law, i.e., marijuana and marijuana plants. The MMMA's confidentiality provision must be and is nullified to the extent it conflicts with the federal law by preventing the

federal government's exercise of its subpoena power under § 876.   Accordingly, the subpoena satisfies the terms of its authorizing statute.[9]

### B.      Does the subpoena seek documents relevant to the investigation?

The question of an administrative subpoena's relevance should be construed broadly. *Doe*, 253 F.3d at 266.  The court defers to the agency's appraisal of relevancy, which must be accepted so long as it is not obviously wrong.  *N.L.R.B. v. American Medical Response, Inc.*, 438 F.3d 188, 193 (2nd Cir. 2006).  Stated another way, documents requested in an administrative subpoena issued by an agency should be produced where "[t]he evidence sought by the subpoena was not plainly incompetent or irrelevant to any lawful purpose of the [agency] in the discharge of [its] duties under the Act."  *Endicott Johnson Corporation v. Perkins*, 317 U.S. 501, 509 (1943) (ordering production of documents requested in an administrative subpoena issued by the Secretary of Labor).

Here, the subpoena was issued as part of an investigation for violations of the Controlled Substances Act.   The DEA is a federal law enforcement agency.   It is charged with, among other things, investigating the possession, manufacture and disposition of marijuana, a controlled substance, which are violations of federal law. The documents sought here include cards identifying persons who are presumably involved in possessing and distributing marijuana contrary to federal law.  The

---

[9] To the extent respondent seeks an order to "immunize" its employees and agents from liability for violating M.C.L. § 333.26426(h), no further order is necessary from this court, because the state's confidentiality provision is a nullity with respect to documents produced in compliance with the federal subpoena.  *See, e.g, In re Grand Jury Subpoena*, 198 F.Supp.2d 1113, 1117 (D. Alaska 2002) (to the extent that a state law proscribes the release of evidence by Alaska's Department of Labor which is "relevant to a federal criminal investigation, it is rendered void and of no effect by the Supremacy Clause, thereby barring any possible state prosecution of the Department based on that law").  Indeed, failures to comply with an administrative subpoena can place respondent in violation of federal law.

subpoena clearly seeks documents relevant to the investigation, the conduct of which is a lawful function of the DEA.

### C.      Does the agency possess the requested information?

At the petition hearing, petitioner's counsel stated that there are seven targets of the subpoena and that it has the requested information with respect to only one of the targets. Accordingly, petitioner has demonstrated that it does not possess the information sought as to six remaining targets in the subpoenas.

### D.      Is enforcement of the subpoena an abuse of the court's process?

"The Supreme Court has stated that a court's process is abused where the subpoena is 'issued for an improper purpose, such as to harass the [investigation's target] or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation.'" *Doe*, 253 F.3d at 271-72, quoting *United States v. Powell*, 379 U.S. 48, 58 (1964). Any bad faith asserted by a challenger to the subpoena "may not be based on the improper motives of an individual agency employee, but instead must be founded upon evidence that the agency itself, in an institutional sense, acted in bad faith when it served the subpoena." *Doe*, 253 F.3d at 272, citing *United States v. LaSalle National Bank*, 437 U.S. 298, 314-16 (1978). The respondent faces a "heavy" burden in establishing institutional bad faith. *Doe*, 253 F.3d at 272, quoting *LaSalle*, 437 U.S. at 316. Respondent has neither claimed nor demonstrated any abuse of the court's process or bad faith in the issuing of this subpoena, nor is any apparent. It is the responsibility of the DEA to enforce 21 U.S.C. § 801 *et seq,* and even if the Attorney General of the United States has adopted a policy of not prosecuting persons who are *bona fide* medical marijuana users and providers as far as the MMMA is concerned, it certainly falls within the scope of the

DEA's responsibility, and authority, to determine, among other things, whether those claiming the benefits of the medical marijuana statute are doing so legitimately and should enjoy the Attorney General's largess. Only the truly naive or the disingenuous would try to argue that the MMMA will not be abused by others seeking a cover for illicitly using or distributing marijuana. Those who are legitimate users or providers of marijuana under the MMMA and their supporters should be concerned that if the federal government cannot satisfy itself that the medical marijuana shield, which it is voluntarily choosing to recognize, is not also sheltering non-medical marijuana traffickers, this Administration or the next may simply pull the plug and prosecute anyone using or distributing marijuana, which it unquestionably may do under existing federal law. *See, United States v. Stacy,* 696 F.Supp.2d 1141, 1148 (S.D. Cal. 2010) ("a reasonable person would not rely on [statements by Attorney General Holder regarding enforcing federal drug laws against medical marijuana users] as an assurance that he or she would not be prosecuted under federal law.").

### E. Conclusion

Petitioner has met its burden of satisfying the first three prongs of the *Doe* test for enforcing an administrative subpoena, while the respondent has not established the fourth prong. Accordingly, the "Petition to enforce Drug Enforcement Administration Subpoena" (docket no. 1) will be granted, except as to those subpoenaed records pertaining to the targeted individual whose records are currently in the agency's possession. The motion will be denied as to the records of this person. The subpoena shall be complied with forthwith. Petitioner shall furnish to the court, under seal, all seven names listed in the subpoena, and identify that person as to which the motion has been

24

denied.  The Motion to Intervene (docket no. 7) will be denied  The motions to file amicus curiae briefs (docket nos.10, 12) will be denied.

   *Endnote:    In the Controlled Substances Act, Congress has devised a closed regulatory system making it unlawful to, inter alia, manufacture, distribute, dispense or possess marijuana except as authorized by the CSA, and has classified marijuana as a Schedule I drug, expressly finding that it "has no acceptable medical uses."  So pervasive is the federal prohibition against marijuana (with one exception not applicable here) that this Opinion has simply stated in several instances, speaking in the vernacular, that it is against the law to use it (although the CSA does not use that phrase), much as the MMMA has done when it states at MCL § 333.26422(c), "federal law currently prohibits any use of marijuana . . .".  The purpose of this Opinion is not to explain the various ways federal marijuana criminal violations can be charged; rather, it makes the distinction that "[t]he CSA designates marijuana as contraband for <u>any</u> purpose," Gonzales v. Raich, 545 U.S. 1, 27 (2005), while the MMMA sometimes excuses the use of marijuana for medical reasons. The Opinion should be read in that context.  This endnote is added to avoid a possible misunderstanding in this respect, and to correct certain typographical errors in case citations as well.  It does not impact the resolution of this case, or the Court's prior Judgment in any way.*

Dated:  June 9, 2011                                      /s/ Hugh W. Brenneman, Jr.
                                                          HUGH W. BRENNEMAN, JR.
                                                          United States Magistrate Judge